In re the Marriage of Jacqueline TOPOLSKI, Appellant–Respondent,

v.

Eugene J. TOPOLSKI, Appellee–Petitioner.

No. 20A03–0005–CV–180.

Court of Appeals of Indiana.

Jan. 23, 2001.

Rehearing Denied March 26, 2001.

Gregory K. Blanford, South Bend, IN, Attorney for Appellant.

Eugene J. Topolski, Elkhart, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Appellant, Jacqueline Topolski, appeals the trial court's decision in favor of her husband, Eugene J. Topolski. Jacqueline contends that the trial court erred in finding her in contempt, in ordering her to reimburse Eugene for certain medical and educational expenses related to the children, in granting Eugene attorney's fees, in failing to find Eugene in contempt, and in ordering Eugene to pay child support in an amount that deviated from the child support guidelines. We find that the trial court did not abuse its discretion when it held Jacqueline in contempt, ordered her to reimburse Eugene and pay his attorney fees, and failed to find Eugene in contempt. Thus, we affirm the trial court in part. However, we reverse and remand for further proceedings to determine the proper amount of the child support payments.

### Facts and Procedural History

Eugene and Jacqueline were divorced pursuant to a Dissolution Decree entered on August 4, 1995. Jacqueline was granted physical custody of the two children, Margaret A. Topolski, born July 18, 1977, and Sara A. Topolski, born July 1, 1980. The parties were granted joint legal custody with Jacqueline having primary physical custody and Eugene having temporary custody according to local rules. Eugene was ordered to pay $160.00 per week in child support and 75 percent of all uninsured medical expenses after a deductible of $758.00 to be paid by Jacqueline. Eugene was also ordered to maintain a life insurance policy in the face amount of $200,000.00 with the two children named as beneficiaries. On September 29, 1995, the decree was altered and Eugene's child support obligation was reduced to $150.00 per week and the medical deductible was increased to $880.00 per year to be paid by Jacqueline.

The eldest child, Margaret, entered college at Texas Christian University (TCU) in the fall of 1995. She received a full athletic scholarship. The Dissolution Decree ordered Margaret to pay one third of the total cost of her college education after grants and scholarships, and the remaining two thirds would be divided between Eugene and Jacqueline. Eugene would pay 60 percent of the remaining cost and Jacqueline 40 percent. During her four years at TCU, Margaret incurred certain expenses that were not covered by her scholarship. The court determined that Eugene paid virtually all of these expenses. Record at 104.

Eugene also paid for many other expenses related to the two children. He paid for many of Sara's high school expenses such as book rental fees. Record at 185. Sara began attending Purdue University in the fall of 1999. Eugene also paid for much of her college expenses. Record at 207–213. Furthermore, Eugene paid for most of the medical expenses of both Margaret and Sara. Record at 174.

Jacqueline filed a Verified Showing of Noncompliance and Petition to Modify Support on March 11, 1999. Eugene then filed a Petition to Emancipate Child, Modify and Abate Support and Determine College Expenses and a Petition for Reimbursement of Expenses, on May 17, 1999. On July 12, 1999, Eugene filed a Motion for Citation to have Jacqueline held in contempt for failing to pay certain college related expenses which he had paid. A hearing was held on March 28, 2000, and the court issued an order in favor of Eugene and against Jacqueline. The court ordered Margaret emancipated as of Au-

gust of 1999 and ordered Eugene to pay $150.00 per week for the support of the two children from the time Jacqueline filed her Petition to Modify support through the date Margaret was emancipated. The court also ordered Eugene to pay $100.00 per week in support for Sara after the emancipation of Margaret. The court further determined that Eugene owes Jacqueline $1,715.00 in support for missed payments, but that Jacqueline owes Eugene $8,659.99 for uninsured medical expenses and educational expenses that she did not pay. Therefore, the court ordered Jacqueline to pay the balance to Eugene. Finally, the trial court ordered Jacqueline to pay $1,500.00 to Eugene for his attorney fees. The court denied Jacqueline's motion to show cause. Jacqueline then initiated this appeal.

### Discussion and Decision

Jacqueline appeals the trial court's decision in favor of Eugene. Specifically, she alleges that the trial court erred in holding her in contempt for failure to pay her share of the education and uninsured medical expense for the children. Furthermore, Jacqueline contends that the trial court erred by not finding Eugene in contempt for failing to timely pay his support and for failing to maintain life insurance as ordered in the Dissolution Decree. Finally, Jacqueline argues that the trial court erred when it ordered Eugene to pay a child support amount which deviated from the child support guidelines and that the trial court did not properly take into account the Post–Secondary Educational Worksheets. We address each issue in turn.

### I. Contempt

Whether a party is in contempt is a matter left to the sound discretion of the trial court, and we reverse the trial court's finding of contempt only if it is against the logic and effect of the evidence before it or is contrary to law. *Mosser v. Mosser*, 729 N.E.2d 197, 199 (Ind.Ct.App. 2000). When reviewing a contempt order, we will neither reweigh the evidence nor

judge the credibility of witnesses, and unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. *Piercey v. Piercey*, 727 N.E.2d 26, 31–32 (Ind.Ct. App.2000). "In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something." *Id.* at 32 (citing *Adler v. Adler*, 713 N.E.2d 348, 354 (Ind.Ct.App.1999)). To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience." *Id.*

### A. Wife

Jacqueline contends that the trial court erred in holding her in contempt for failure to pay her share of the children's educational and medical expenses per the Dissolution Decree. The original decree clearly ordered Jacqueline to pay part of the education and uninsured medical expenses for the children. The trial court determined that she owed $6,944.01 in arrears to Eugene for these expenses. However, Jacqueline argues that the trial court erred in making its determination. In particular, she contends that by forcing her to reimburse Eugene the court retroactively modified the original decree, that the trial court improperly determined certain expenses to be educational expenses and that she had no notice of the education or medical expenses Eugene paid.

Jacqueline first contends that the order to reimburse Eugene for college and medical expenses in effect constituted a retroactive modification of the divorce decree and as such she was not in contempt of the court's order. The Dissolution Decree ordered that both Eugene and Jacqueline were obligated to pay at least a portion of the education and medical expenses of their children. Eugene fulfilled his obligation, while Jacqueline has not. After reviewing the record, we find that the evidence supports the trial court's decision to order Jacqueline to reimburse

Eugene. As stated previously, the evidence presented showed that Eugene paid for most, if not all, of Margaret's educational expenses not covered by her scholarship and most of the children's medical expenses. The trial court simply based its reimbursement on the Dissolution Decree itself. Record at 20, 103–104. The trial court did not modify the decree; rather, by finding Jacqueline in contempt, the trial court was merely enforcing its prior order.

■ Jacqueline next alleges that Eugene's payments towards Margaret's educational expenses were voluntary because Margaret had a full scholarship and thus she should not be held in contempt for failing to reimburse Eugene. Jacqueline essentially is asking us to reweigh the evidence presented to the trial court. The trial court examined the evidence and determined what was and was not educational. The trial court did not order Jacqueline to reimburse Eugene for every expense; in fact, it did not allow Eugene's claim for spending money that he had sent to Margaret upon her request. Record at 104. We will not revisit the trial court's decision.

■ Finally, Jacqueline argues that she did not have notice of either Margaret's educational expenses or the children's medical expenses that Eugene paid and therefore her conduct was not willful disobedience of the court's order. However, after reviewing the record we determine that Jacqueline did have notice of the expenses. Eugene testified that he had initially talked to Jacqueline about the money he was paying Margaret while she attended school but that "she refused to pay so it was worthless to call back again every time I wrote a check that she'd say no." Record at 162. He further testified "every time a medical bill came she gave it to the kids and gave it to me and said she wouldn't pay it." Record at 174. Jacqueline knew that she did not pay any money to Margaret while she was at school and that she did not pay medical expenses for

the children. She also knew that Eugene was paying these expenses.

Accordingly, we find the trial court did not abuse its discretion when holding Jacqueline in contempt and we affirm the trial court's decision.

### B. Husband

Jacqueline also argues that the trial court abused its discretion by not finding Eugene in contempt. She alleges that Eugene's child support payments were not timely, regular, or consistent and therefore he should be held in contempt. She further argues that Eugene's life insurance policy held through his business does not meet the criteria set in the decree and thus he should be held in contempt.

#### 1. Support Payments

Indiana Code § 31–16–12–6 states "if the court finds that a party is delinquent as a result of an intentional violation of an order for support, the court may find the party in contempt of court." The trial court in its order stated:

5. The arrears in calculation is the easiest to resolve. From August 4, 1995 to March 11, 1999, the husband should have paid $27,340.00 in child support for two children, after credits for summer visitation. Payments for the same period of time were $25,925.00, leaving arrears of $1,415.00 as of March 11, 1999. The court notes that, under the newer rules for child support, the husband may have been entitled to a substantial reduction in support for the period of time when Margaret was a full-time student in college, but no request was made by him for such a reduction. Considering the fact that the wife has paid none of the college expenses nor summer travel expenses necessary for Margaret to maintain her scholarship, the court believes that the arrears, although needing to be paid, do not rise to the level of a willful disregard of a court order and the

court will not find the husband to be in contempt.

Record at 101.

This court dealt with this issue in *Whitman v. Whitman*, 405 N.E.2d 608 (Ind.Ct. App.1980). We held that the husband was not in contempt even though he failed to comply with the dissolution decree. In *Whitman*, the trial court found the husband to be delinquent in child support even though he purchased clothing, toys, food and entertainment for his children. The court denied his request for credit, but he was not held in contempt for failing to fully comply with the decree. The court noted that he did care for and support his children. *Id.* at 614. In upholding the trial court's decision, this court held that although the evidence is conflicting, the trial court could reasonably conclude that husband's failure to comply with the order was not willful disobedience of its terms. *Id.*

■ Our case is similar. From August 1995 through March 1999, Eugene had arrears of $1,415.00. However, the trial court found that he paid for all of Margaret's expenses when she was at TCU and her summer travel expenses for her to maintain her scholarship. The trial court further determined that he also paid a substantial portion of the uninsured medical expenses for both children. Record at 174. Furthermore, the court found that Eugene paid for all of Sara's expenses for the current school year and Jacqueline paid nothing. Eugene did not show an unwillingness to comply with the Dissolution Decree, but presented evidence to show that he was unable to comply over short periods of time. Record at 130. Thus, we find that the trial court did not abuse its discretion when it held that Eugene's failure to consistently and timely pay child support was not willful disobedience.

### 2. Life Insurance

Jacqueline further alleges that Eugene should be held in contempt for failing to maintain a life insurance policy with the children named as beneficiaries as ordered in the Dissolution Decree. Record at 22. Specifically, she alleges that the life insurance policy he has maintained was bought through a contract with his business partners and does not fulfill the terms of the dissolution decree.

■ We note that the trial court failed to make any findings concerning the life insurance policy in its order. It was addressed during the March 28, 2000 hearing, but no order was issued. We, therefore, remand to the trial court for determination of whether Eugene's life insurance policy is in compliance with the Dissolution Decree.

### II. Attorney's Fees

Jacqueline next argues that the trial court erred when it awarded Eugene attorney's fees. She argues that Eugene should have been found in contempt and not her and thus Eugene should pay her attorney's fees. She also argues that it is inequitable for her to pay the fees due to the large disparity in their respective incomes.

■ However, we have already affirmed the trial court's holding that Jacqueline is in contempt. Without regard to economic resources, once a party is found in contempt, the trial court has "the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions." *Adler v. Adler*, 713 N.E.2d 348, 355 (Ind. Ct.App.1999) (citing *Crowl v. Berryhill*, 678 N.E.2d 828, 832 (Ind.Ct.App.1997)). Because Jacqueline was found to be in contempt and Eugene was not, the trial court did not err in awarding attorney fees to Eugene.

### III. Child Support Order

The trial court calculated Eugene's child support obligation for two different periods of time. The first period was for both

girls from March 12, 1999, the date Jacqueline filed her Petition to Modify, through August 20, 1999, the date Margaret was emancipated. The second period began on August 20th and was for the continued support of Sara only. Both calculations were based upon Eugene's annual income of $166,000 and Jacqueline's annual income of $23,000.

The trial court ordered Eugene to pay Jacqueline $150 for the support of both girls during the first period, notwithstanding under the guidelines he should have paid $420.00 per week. The court further ordered Eugene to pay $100 per week for the support of Sara during the second period, despite the support guidelines indicating support of $280.00 per week. The court listed the following reasons for deviating from the guidelines: a) the amount of support determined under the guidelines is excessive and would exceed the wife's income; b) Jacqueline has failed to demonstrate that she has paid any of the court-ordered amounts for education and medical expenses for the children and; c) there was no evidence that the standard of living of the children would have changed. Record at 102.

 On review of child support orders, the appellate court must disregard issues of weight and credibility and consider only the evidence and reasonable inferences favorable to the judgment. *Kinsey v. Kinsey,* 640 N.E.2d 42, 43–44 (Ind.1994). An award of child support will not be reversed unless it is clearly erroneous. *Id.* A deviation from the Guidelines will be affirmed if it is supported by proper written findings justifying the deviation. *Id.* The commentary to Indiana Child Support Guideline 1 states that judges must not blindly adhere to the computations for support without considering all the variables that may require changing the result. Here, the trial court gave its reasons for deviating from the child support guidelines; however, these findings do not justify the substantial deviation from the child support guidelines.

 The first reason the court listed for its deviation was that the amount would be excessive and would exceed the wife's income. However, child support awards are designed to provide the child as closely as possible with the same standard of living as if the marriage had not been dissolved. *Bussert v. Bussert,* 677 N.E.2d 68, 70 (Ind.Ct.App.1997), *trans. denied.* Thus, even if the child support award under the guidelines exceeds the income of one parent, it is still proper because the child does not receive support based upon the income of one parent, if married, rather the child receives benefits from both parents. The income levels are taken into account when the support guideline worksheets are filled out. Therefore, using the income level of the non-paying parent as a guide for deviating from the support guidelines is not a valid reason for the deviation.

 As a further reason to deviate from the guidelines, the trial court cited Jacqueline's failure to pay for any of the court-ordered amounts for education and medical expenses. However, this also does not justify the deviation. The trial court held Jacqueline in contempt for not paying her obligation and ordered her to pay back Eugene what he is owed under the terms of the Dissolution Decree. The trial court should not have also used Jacqueline's failure to pay as a reason for lowering the child support payment as she is already reimbursing Eugene for that amount.

 Finally, the court stated that there was no evidence that the children's standard of living would be any different with the larger support payments. Again, we note that the purpose of child support is to maintain the standard of living as if the marriage had not been dissolved. There is no pre-requisite showing that the custodial parent must prove that the standard of living would be better or worse depending on the amount of the support. We assume that the custodial parent will use the child support payment to raise the

standard of living for the child. Because the trial court's reasons for deviating from the child support guidelines are erroneous, we reverse and remand for further proceedings to determine an appropriate child support amount.

We also note that neither party submitted Post–Secondary Educational Support Worksheets. In calculating the support amount, the trial court must require the parties to file Post–Secondary Educational Support Worksheets. *Warner v. Warner*, 725 N.E.2d 975, 979 (Ind. Ct.App.2000). Because we are remanding in any case for a recalculation of the child support amount, we also remand with instructions to require the parties to file the worksheet to aid in the determination of the support payments.

Therefore, we affirm in part and reverse and remand in part for proceedings not inconsistent with this opinion.

KIRSCH and NAJAM, JJ., concur.