**In re the Marriage of Patrick R. SCOLERI, Appellant–Petitioner,**

v.

**Rebecca SCOLERI, Appellee Respondent.**

No. 45A05–0108–CV–381.

Court of Appeals of Indiana.

April 26, 2002.

Joseph Banasiak, Bosch & Banasiak, Hammond, IN, Attorney for Appellant.

John M. Hughes, Conyers, Hollandsworth & Hughes, Highland, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Patrick Scoleri ("Father") appeals the trial court's denial of his petition to modify his child support obligation and the award of $4,777.50 in attorney's fees to Rebecca Scoleri ("Mother").[1] We affirm.

### Issues[2]

Father raises the following consolidated and restated issues for our review:

1. Whether the trial court properly denied Father's petition to modify his child support obligation; and

2. Whether the trial court properly awarded $4,777.50 in attorney's fees to Mother.

### Facts and Procedural History

The facts reveal that Father and Mother were married on November 11, 1978. The marriage produced four children, C.S. born

---

1. We note that Mother's brief was argumentative did not assist this court in the determination of the present appeal. We remind Mother that an appellate brief should contain a persuasive argument addressing the issues raised on appeal.

2. Father also contends that the trial court's findings of fact were not supported by the evidence at trial. Father contests the validity of findings of fact number three, eight, nine, thirteen, seventeen, eighteen, and nineteen. Because the trial court sua sponte entered findings of fact and we have affirmed the trial court's denial of Father's petition for modification of custody on other grounds, we need not address this issue.

April 2, 1982, T.S. born February 20, 1984, K.S. born July 8, 1989, and K.S. born May 23, 1992. On June 16, 1994, the trial court entered a summary dissolution decree awarding the parties joint legal custody of the children with Mother having sole physical custody.[3] As part of the decree, Father was ordered to pay $325.00 per week in child support.

On July 11, 1998, Father unilaterally reduced his child support obligation to $250.00 per week, informing Mother by written note that "[Mother], do what you have to do, I'm sorry I'm trying. [Father]." Appellant's Appendix at 9. On August 24, 1998, Father filed with the trial court a petition for modification of child support. Father argued that he was entitled to a modification of support because his job as a pressman supervisor had terminated and he was currently working at a lower paying job.

On August 24, 1998, Mother filed with the trial court a petition for modification of child support and a petition for citation of contempt requesting that the court cite Father for contempt because he was $450.00 in arrears with respect to child

support as of August 14, 1998. On February 23, 1999, Mother filed with the trial court another petition for citation of contempt.[4] Following a hearing, the trial court on May 15, 2001, sua sponte entered findings of fact and conclusions of law.[5] The trial court denied Father's petition for modification of child support and concluded that Father was in civil contempt. In addition, the trial court awarded Mother $4,777.50 in attorney's fees and ordered Father to pay Mother $2,925.00 in back child support.

On June 13, 2001, Father filed with the trial court a motion to correct errors. On July 12, 2001, Father filed with the trial court an amended motion to correct errors. This appeal ensued.

### Discussion and Decision

### I. Modification of Child Support

Father first contends that the trial court erred in denying his petition to modify his child support obligation. We disagree.

### A. Standard of Review

■■■ In the present case, the trial court sua sponte entered findings of fact and conclusions of law.[6] "When the trial

---

3. We note the trial court in the summary dissolution decree approved the June 14, 1994, agreement entered into between the parties entitled "Marital Property Settlement, Custody, Support, and Visitation Agreement."

4. We note that there is evidence in the record that an agreement was reached by Mother and Father whereupon Father would pay $1,275.00 to bring his child support arrears current through October 31, 1998. It appears Mother agreed to lower the amount of Father's arrearage in exchange for immediate payment of the agreed amount of Father's child support arrearage. As part of this same agreement, Father also promised to pay the Mother's attorney $300.00 in fees. *See* Appellant's Appendix at 10–11, 22. While these facts are recited in the trial court's order, there is nothing else in the record that supports this agreement between Mother and Father.

5. We note that on June 12, 2001, the trial court entered another order that slightly deviated from the trial court's May 15, 2001, order. The latter part of the first order quoted Mother's prayer for relief while the latter part of the June 12, 2001, order stated the trial court's judgment. *See* Appellant's Appendix at 18, 30. The trial court was required to enter an additional order because of its verbatim adoption of Mother's proposed order including Mother's prayer for relief.

6. The record reveals that the trial court on July 13, 1999, ordered the parties to submit proposed findings of fact and conclusions of law by July 26, 1999. Appellant's Appendix at 71. Both parties submitted proposed findings of fact and conclusions of law. Thereafter, the trial court on May 15, 2001, entered an order denying Father's petition for modification of custody. The trial court nearly

court enters such findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found." *Nelson v. Marchand,* 691 N.E.2d 1264, 1267 (Ind.Ct. App.1998). In reviewing the judgment, this Court must determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* We will reverse a judgment only when it is shown to be clearly erroneous, "i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings." *Id.* For findings of fact to be clearly erroneous, the record must lack probative evidence or reasonable inferences from the evidence to support them. *Id.* In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *Id.* Finally, a general judgment may be affirmed on any theory supported by the evidence presented at trial. *Id.*

 On appeal from the denial of a petition to modify, we review the trial court's decision under the clearly erroneous standard. *Beardsley v. Heazlitt,* 654 N.E.2d 1178, 1180 (Ind.Ct.App.1995). We will reverse a decision regarding modification of child support only where it is clearly against the logic and effect of the facts and circumstances that were before the

trial court. *Id.* Child support awards may be modified only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind.Code § 31–16–8–1. On appeal, we do not weigh the evidence or judge the credibility of the witnesses but, rather, consider only that evidence most favorable to the judgment, together with the reasonable inferences that can be drawn therefrom. *Bower v. Bower,* 697 N.E.2d 110, 113 (Ind. Ct.App.1998). The petitioner bears the burden of proving a substantial change in circumstances justifying modification. *Weiss v. Frick,* 693 N.E.2d 588, 590 (Ind. Ct.App.1998), *trans. denied.*

### B. 401(k) Account

Father first argues that the trial court erred in denying his petition for modification of suport because the return derived from the early withdrawal of his 401(k) is not income within the meaning of the

---

adopted verbatim Mother's findings of fact and conclusions of law in its May 15, 2001 order. When a trial judge signs a party's proposed findings of fact and conclusions of law, they become the trial court's findings of fact and conclusions of law. *National Briquette Corp. v. State Bd. of Tax Comm'rs,* 604 N.E.2d 11, 13 (Ind.Ct.App.1992), *trans. denied.* The trial court is responsible for the correctness of the findings of fact and conclusions of law and they are not weakened because they were adopted verbatim. *Id.* If the

proposed findings of fact and conclusions of law did not state the facts as the trial court found them to be, it would not have adopted them as its own. *Id.* Indiana Trial Rule 52(C) encourages the trial court to request the parties to submit proposed findings of fact and conclusions of law. Thus, trial courts have the discretion to adopt a party's proposed findings of fact and conclusions of law as their own. However, we discourage this practice where many of the findings submitted by a party are argumentative.

Indiana Child Support Guidelines. Mother argues that the return from the cashed 401(k) should be included in the calculation of Father's weekly gross income.

In the present case, Father possessed a 401(k) account with Holden Graphics Company in the amount of $35,000.00 when he left the printing company. On August 3, 1998, Father made an early withdrawal from his 401(k), incurring a penalty of $7,000.00, receiving a return in the amount of $28,000.00. Father essentially "cashed in" the full amount of his 401(k). Father applied $8,000.00 of the return to pay bills and used the remaining amount as a down payment for a home in his then-fiancée's name. In denying Father's petition, the trial court determined that Father's child support obligation should not be reduced in part because he clearly demonstrated the financial ability to pay $325.00 per week in support when he gave his then-fiancée $20,000.00 as a down payment for the home. *See* Appellant's Appendix at 17, 29.

We will first discuss the nature of 401(k) accounts. A 401(k) plan, sometimes called a "salary reduction" plan, is the product of amendments to the Internal Revenue Code, made pursuant to the Revenue Act of 1978 that became effective 1980.[7] Typically, an employer sets up a 401(k) plan with an investment company, an insurance company, or a bank trust department. The 401(k) plan is unique in that the employee may elect between: (a) having an employer contribute a portion of his or her salary to a 401(k) plan; or (b) having the employer pay the amount directly to him or her. In the first situation, the employee is not taxed currently; however, in the

second situation the employee is taxed in the year the income is received. If an employee is faced with genuine financial hardship,[8] and the plan so provides, any money of the plan may be withdrawn without penalty. In addition, the employee can take the money in a lump sum after the age of fifty-nine and one-half (59½) years. If the money is withdrawn early, the individual will incur a ten percent (10%) penalty and be required to pay federal, state, and local taxes on the return. We are presented with the question of whether the return from Father's early withdrawal from his 401(k) constitutes income within the meaning of the Indiana Child Support Guidelines.

The Guidelines define weekly gross income as follows:

> For purposes of these Guidelines, "weekly gross income" is defined as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits. Weekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance received from other marriages. Specifically excluded are benefits from means-tested public assistance programs, including, but not

---

7. Revenue Act of 1978, Pub.L. No. 95–600, § 135, 92 Stat. 2763 (1978) (codified as amended at I.R.C. § 401(k)).

8. Typically an individual must show financial hardship, such as providing an eviction notice, contract to purchase a primary residence, unreimbursed medical bills, or college tuition bill.

limited to Temporary Aid To Needy Families (TANF), Supplemental Security Income, and Food Stamps. Child Supp. G. 3(A)(1). The phrase "actual income" has been interpreted by this court as existing income currently received by a parent and available for his or her immediate use. *Carmichael v. Siegel,* 754 N.E.2d 619, 628 (Ind.Ct.App.2001).

This court was previously faced with the issue of whether the annual return of an IRA[9] that is automatically reinvested constitutes income within the meaning of our Guidelines. We concluded that when "the annual returns of a parent's IRA or IRAs are automatically reinvested and there is no indication that previous withdrawals from the IRA have been made to fund the parent's lifestyle choices or living expenses, those returns generally should not be considered 'actual income' when calculating the parent's child support obligation. Such returns are not currently received by the parent nor immediately available for his or her use." *Id.* at 629. We see no reason why an individual's 401(k) account that is automatically reinvested should be considered any differently under the Indiana Child Support Guidelines.

■ This case presents a unique situation. Father made an early withdrawal of his 401(k) and the return was received by Father and immediately available for his use. The money was not automatically reinvested. In-kind benefits a parent receives "that reduce his or her living expenses" may be imputed as income. Ind. Child Support Guideline 3(A), cmt. 2. Certainly, Father's return from the early withdrawal from his 401(k) reduced his current living expenses. We believe that the return constitutes income within the meaning of the Indiana Child Support Guidelines, especially considering that a portion of the return was spent satisfying certain financial obligations and a portion of the return was utilized as a down payment on a home where Father currently resides with his new wife.

However, the parties agreed and the trial court entered an order awarding Father his 401(k) account as part of the marital property distribution. The trial court's order provides in pertinent part that:

> [Father] is awarded all monies currently vested in his savings account through his place of employment, as well as any and all other retirement benefits which he as a vested interest in.

Appellant's Appendix at 85. Therefore, to utilize the return from Father's early withdrawal from his 401(k) in the calculation of his weekly gross income would usurp the equitable split of the marital property in the summary dissolution decree.[10] Pre-

---

**9.** In *Carmichael,* this court discussed the nature of an IRA:

> The fundamental intended purpose of the laws creating the IRA was to encourage saving in order to provide income to a taxpayer during his or her retirement that will supplement Social Security and employer-provided pension plans. In an attempt to ensure that IRA funds are available to finance an account holder's retirement, a ten percent penalty is imposed on withdrawals made before the holder is fifty-nine and one-half years old. There is no absolute prohibition against making early withdrawals from an IRA

for those who wish to do so and pay the penalty; moreover, several exceptions to the ten percent penalty have arisen in recent years, including withdrawals for first-time home purchases, college expenses, and medical expenses.

*Carmichael v. Siegel,* 754 N.E.2d 619, 628–29 (Ind.Ct.App.2001) (citations omitted).

**10.** There is a statutory presumption that an equal division of marital assets is just and reasonable. Ind.Code § 31–15–7–5. However, a party may rebut the presumption by presenting relevant evidence about: (1) each party's contribution to the acquisition of the

sumably, the parties agreed that Father would retain his 401(k) IRA in exchange for Mother retaining the marital home. *See* Appellant's Appendix at 85. Without any evidence to the contrary, we deem it inequitable to utilize Father's portion of the marital property, his 401(k) account, in the calculation of his weekly gross income. Based on the facts and circumstances of the present case, we hold that it was error for the trial court to utilize Father's return for the early withdrawal of his 401(k) account in calculating his child support obligation. But this does not require a reversal of the trial court's decision.

### C. Voluntarily Underemployed

Father also argues that the trial court erred in denying his petition for modification of child support because potential income should not be imputed to him. Father disputes Mother's contention that he is voluntarily underemployed, arguing that he chose to pursue a career as a paramedic due to the termination of his job as a supervisor pressman as the result of a plant closure. Furthermore, Father argues that employment opportunities as a supervisor pressman are virtually nonexistent due to changing market and technological advances.

In denying Father's petition for modification of child support, the trial court concluded in part that:

> [Father] was earning $19.30 per hour as a supervisor at Stewart Hooper/Holden Business Forms. [Father] has the *potential* to earn at least that, but instead he chooses to work as a paramedic for $13.00 per hour. When Holden closed, [Father] did not look for a supervisor

position or job in the printing business, instead [Father] made a conscious decision to completely change careers. There was a considerable training period and time of lower income as he started as a paramedic at approximately $8.50 per hour. [Father] could just as easily secured another equivalent job, or perhaps even a higher paying job, yet he chose to pursue his passion as a paramedic. [Father] needed considerable training to become a paramedic. If as [Father] argues, he was not qualified for equivalent employment as a supervisor or journeymen printer, he could just as easily have been retrained for something with greater earning potential. Clearly, [Father] chose to change careers and he expects to do it at the expense of his four (4) children....

Appellant's Appendix at 15–16, 28 (emphasis in original).

■■■■ In Indiana, when a parent becomes voluntarily unemployed or underemployed, the trial court must calculate support based upon a determination of potential income. Child Supp. G. 3(A); *In re Paternity of Buehler,* 576 N.E.2d 1354, 1355 (Ind.Ct.App.1991). The amount of potential income to be used is determined by considering the obligor's potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. *Id.* The purposes behind determining potential income are to "discourage a parent from taking a lower paying job to avoid the payment of significant support" and to "fairly allocate the support obligation when

property, income producing or not; (2) the extent that the property was acquired by either of the parties before the marriage, through inheritance, or by gift; (3) the economic circumstances of each of the parties at the time of the disposition of the property; (4)

the spouses' conduct during the marriage with regard to the disposition or dissipation of their property; and, (5) the earning abilities of the spouses related to the division of the property and the final determination of the parties' property rights. *Id.*

one parent remarries and, because of the income of the new spouse, chooses not to be employed." Child Supp. G. 3, cmt. 2c; *see also, Buehler,* 576 N.E.2d at 1355–1356. Also, there is no basis for determining that a parent is underemployed when the level of his or her earnings has remained relatively constant for a number of years. *Buehler,* 576 N.E.2d at 1354.

The record reveals that when the trial court on June 16, 1994, set Father's child support obligation at $325.00 per week, Father was employed as a pressman supervisor for Stuart Hooper Company earning $19.30 per hour. In June of 1997, Father began taking paramedic classes due to rumors of plant closure. In the early part of December of 1997, Holden Graphics Company purchased Stuart Hooper Company and began reorganizing the company and trimming the workforce by instituting a series of layoffs and plant closures. Holden Graphics Company terminated Father's job on December 22, 1997. Thereafter, Father continued his pursuit of a career as a paramedic on a full-time basis, making $8.50 per hour during his training period. Father chose not to take Holden Graphics Company's offer of outplacement in one of its other plants.

█ We cannot say Father was voluntarily underemployed. It is apparent that Father decided to pursue a different career because employment opportunities as a pressman in the business forms field were limited due to technological advances. Although Holden Graphics Company offered Father outplacement as a pressman in one of its other plants, this position was at a lower wage level and would have involved significant relocation. Moreover, the few companies that were hiring pressmen and with which Father sought employment did not offer him a job. Furthermore, there is no evidence that Father chose to become a paramedic in order to avoid his support obligations. We have previously stated that child support orders cannot be used to force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks. *Buehler,* 576 N.E.2d at 1356. Consequently, we hold that Father was not voluntarily underemployed and potential income should not have been imputed to him. But this also does not require that the decision of the trial court be reversed.

### D. Other Grounds

Although we have determined that Father's return from his early withdrawal of his 401(k) should not have been considered in the calculation of his support obligation and that Father was not voluntarily underemployed, we find other grounds to affirm the trial court's denial of Father's petition for modification of child support.

Indiana Child Support Guideline 4 provides that "[t]he provisions of a child support order may be modified only if there is a substantial and continuing change of circumstances." Commentary to this Guideline provides in pertinent part that:

> Before a child support order may be modified in Indiana, it is necessary for a party to demonstrate a substantial and continuing change in circumstances that makes the present order unreasonable.... A change in circumstances may be the result of a change in the income of the parents or it may result from changes in the expenses of child rearing that are specifically considered in the Guidelines.... Again, it is not the intent of the Guidelines to drive obligors into noncompliance by reducing their spendable income below subsistence level.

Child. Supp. G 4, cmt. Thus, should a parent's income diminish such that the current child support order becomes un-

reasonable, he or she is free to petition the trial court to modify the same.

On February 9, 1999, Father testified before the trial court that he earned $19.30 per hour and worked forty hours per week when he was employed as a supervisor pressman. During the latter part of his employment with Holden Graphics Company, Father testified that he also earned $8.50 per hour working part-time as a paramedic for CoMed. Father testified that after the plant closed, he obtained additional employment as a paramedic. Father further testified that he currently earned $8.50 per hour working part-time as a paramedic for CoMed and that he earned $7.50 per hour working part-time as a paramedic for the Town of Merrillville. He testified that he would receive a salary increase in both of these jobs after the successful completion of his training period and his certification as a paramedic.

At the July 13, 1999, hearing, Father testified that he was still employed as a paramedic for both CoMed and the Town of Merrillville. Father testified that his current hourly rate at CoMed was $13.00 per hour and that he made $9.50 per hour working for the Town of Merrillville. In addition, Father testified that he currently worked a total of 55–60 hours per week. Moreover, Father testified that his current salary for working as a paramedic exceeds the salary he received his last year working for Holden Graphics Company as a supervisor pressman. Furthermore, Father opined at the hearing that his salary as a paramedic would continue to increase over time.

The evidence establishes that Father works two jobs as a paramedic to maintain his current income level. It appears from Father's pay stubs that he works full-time at CoMed at $13.00 per hour, and part-time for the Town of Merrillville at $9.50 per hour. The Indiana Child Support Guide Guidelines classify income from a second part-time job as "irregular income." Commentary to Guideline 3 provides that:

> Another form of irregular income may exist when an obligor takes a part-time job for the purpose of meeting financial obligations arising from a subsequent marriage, or other circumstances. Modification of the support order to include this income or any portion of it may require that the obligor .continue with that employment just to meet an increased support obligation, resulting in a disincentive to work.

Ind. Child Supp. G. 3(A), cmt. 2(b).

We have recently stated that a trial court must carefully scrutinize a parent's second job in determining weekly gross income, and that a parent should not have to maintain a second job to satisfy a support obligation. *Fields v. Fields*, 749 N.E.2d 100, 107 (Ind.Ct.App.2001), *trans. denied.* "The employment decisions a parent makes while married may not be as feasible when a parent is divorced and has visitation of his or her children. A situation can easily arise where the parent works two jobs or overtime hours to meet support obligations, but then has no time to have visitation with his or her children due to the hectic work schedule. Depending on the unique factual circumstances of a case, a parent's full-time employment or regular work hours may be appropriate for computation of child support so a parent can have visitation with his or her children." *Id.*

■■■ Here, Father testified that his salary as a paramedic will continue to increase to the level where he will no longer need to work two paramedic jobs to earn the same salary he earned as a supervisor pressman. The evidence contained in the record supports this conclusion that Father's salary has steadily increased since he entered the paramedic field. Moreover,

Father's income level is currently higher than the income he received before the divorce. Therefore, we cannot say that Father has shown a substantial change in circumstances warranting the modification of his child support obligation because his income level has remained constant. Consequently, we affirm the trial court's decision to deny Father's petition to modify his child support on other grounds. Accordingly, Father's child support obligation shall remain at $325.00 per week.

## II. Attorney's Fees

Father also contends that the trial court erred in awarding Mother attorney's fees in the amount of $4,777.50. We disagree.

### A. Standard of Review

■ We review an award of attorney fees for an abuse of discretion. *Truman v. Truman*, 642 N.E.2d 230, 238 (Ind. Ct.App.1994). The trial court has broad discretion in assessing attorney fees, and reversal is warranted only when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *In re Marriage of Tearman*, 617 N.E.2d 974, 978 (Ind.Ct.App. 1993). When assessing attorney's fees, the trial court considers the resources of the parties, their economic condition, their ability to engage in gainful employment and to earn adequate income and other factors that bear on the reasonableness of the award. *Hanson v. Spolnik*, 685 N.E.2d 71, 80 (Ind.Ct.App.1997), *trans. denied.* The court may also look at the responsibility of the parties in incurring the attorney's fees. *Id.* The trial judge possesses personal expertise that he or she may use when determining reasonable attorney's fees. *Bower v. Bower*, 697 N.E.2d 110, 115 (Ind.Ct.App.1998).

### B. Award of Fees to Mother

Father argues that the trial court abused its discretion in awarding Mother

attorney's fees in the amount of $4,777.50. Father argues that $2,500.00 is a more appropriate award of attorney's fees considering the routine nature and slight complexity of the present case. Father does not contest the trial court's determination that he was in contempt of court.

The trial court's order awarding Mother attorney's fees provides in pertinent part:

Because of [Father]'s conduct described herein which gave rise to two separate Citations for Civil Contempt, he should be ordered to pay [Mother's] reasonable attorney's fees of $4,777.50. This amount reflects $3,577.50 presented by affidavit at hearing and an additional $1,200.00 for 8 hours at $150.00 per hour for client meetings and the tasks of preparing and filing these [motions].

Appellant's Appendix at 17, 49. The trial court references the following conduct by Father which was in "willful disobedience" of its order: (1) Father's unilateral reduction of his child support obligation and failure to satisfy his child support arrearage; (2) Father's refusal to satisfy a credit card debt; (3) Father's failure to maintain medical insurance for children; and (4) Father's refusal to tender a coin collection to his children.

■ We recognize that it is within the discretion of the trial court to hold an individual in contempt for willfully disobeying a court order. *Farmer v. Farmer*, 735 N.E.2d 285, 289 (Ind.Ct.App.2000). We also acknowledge that contempt is available to assist in the enforcement of child support orders and judgments, which is why the trial court held Father in contempt here. *See id.* Without regard to economic resources, once a party is found in contempt, the trial court has "the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions."

*Adler v. Adler*, 713 N.E.2d 348, 355 (Ind. Ct.App.1999). Such inherent authority includes the award of attorney's fees that were expended by a party in order to enforce a child support order and judgment. *See Topolski v. Topolski*, 742 N.E.2d 991, 996 (Ind.Ct.App.2001).[11]

██ In support of her request for attorney's fees, Mother submitted two affidavits of attorney fees and the invoice of fees that delineated the amount of fees charged for the work performed by Mother's attorney. This evidence supports the trial court's award of attorney's fees and we do not believe that the nature of this case warrants a reduced amount. Therefore, we hold that the trial court did not abuse its discretion in awarding Mother attorney's fees in the amount of $4,777.50.

### Conclusion

Based on the foregoing, we hold that the trial court properly denied Father's petition to modify his child support obligation. In addition, we hold that the trial court properly awarded attorney's fees to Mother in the amount of $4,777.50.

Affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

The majority appropriately holds that the trial court erred in including Father's early withdrawal of his 401(k) account in calculating his weekly income for child support purposes. I further agree that the trial court erred in determining that Father was voluntarily underemployed and thereby imputing potential income to him for child support calculation purposes. I further agree that the majority reasonably analyzes Father's income situation and has, with cause, determined that Father is, or soon will be, in a better income situation than he would have been had he continued to earn wages as a pressman at Holden Graphics and upon which wages the $325 per week support order was based.

These factors do not, however, lead to the majority's determination to affirm the trial court's order upon grounds that if the trial court had correctly assessed the evidence in light of applicable law it would have automatically and necessarily entered the identical ruling. To the contrary, I believe it is incumbent upon us to reverse and remand the matter for reconsideration of the evidence without regard to the 401(k) withdrawal and without regard to the perceived underemployment and to then apply the Child Support Guidelines accordingly. Only after the trial court has been permitted to do its fact-finding job and has entered an order accordingly, should the matter be subject to appellate scrutiny. We should not affirm an anticipated denial of Father's modification petition before that denial is entered.

I otherwise concur in the holdings of the majority.

---

11. We also note that Indiana Code section 31–16–11–1 provides that:

(a) The court periodically may order a party to pay a reasonable amount for:

(1) the cost to the other party of maintaining or defending any proceeding under this chapter, IC 31–16–2 through IC 31–16–10, or IC 31–16–12;

(2) attorney's fees; and

(3) mediation services;

including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

(b) The court may order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name.