**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
Dec 06 2013, 6:08 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**EUGENE M. FEINGOLD**
**STEVEN P. KENNEDY**
Law Offices of Eugene M. Feingold
Munster, Indiana

ATTORNEY FOR APPELLEE:

**ADAM J. SEDIA**
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRACY L. OEDZES, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1302-DR-67 |
| | ) | |
| BRYAN S. OEDZES, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
The Honorable Michael A. Sarafin, Magistrate
Cause No. 45C01-0604-DR-282


**December 6, 2013**


**MEMORANDUM DECISION - NOT FOR PUBLICATION**


**NAJAM, Judge**

## STATEMENT OF THE CASE

Tracy Oedzes ("Wife") appeals the trial court's denial of her motion for rule to show cause alleging that Bryan Oedzes ("Husband") had violated the terms of their dissolution decree. Wife presents two issues for our review:

1. Whether the trial court abused its discretion when it found that Husband was not in contempt.

2. Whether the trial court abused its discretion when it denied her petition for attorney's fees.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married in 1996, had two children together, and separated in 2006. Ultimately, Husband and Wife entered into a Marital Property Settlement, Custody, Alimony, and Parenting Agreement ("the Agreement"), which the trial court approved and incorporated into a decree of dissolution on March 11, 2011. The Agreement provided in relevant part as follows:

31. [Husband] is awarded all right, title and interest in and to the marital residence, commonly known as 1239 Killarney Drive, Dyer, Indiana 46311, and the right, title and interest in said real estate is divested from [Wife] and vested in [Husband].
32. [Wife] shall execute a quit claim deed conveying her interest in the marital residence to [Husband], subject to the outstanding mortgages, debts, liens, taxes and all other expenses associated with said real estate. The outstanding mortgage, debts, liens, taxes and other expenses shall be assumed by [Husband], paid by [Husband] in accordance with their terms, and from which indebtedness [Husband] shall hold [Wife] harmless and indemnify her from any loss or expense on account thereof.
33. [Husband] shall cause [Wife] to be released from the liability of the existing note or notes, mortgage or mortgages, and liens on the marital residence within three (3) months following the delivery of the quit claim deed. The time may be extended month by month upon a showing of reasonable cause to do so.

34.     During the period of time that [Wife] is sharing the residence of [Husband], [Husband] shall pay the mortgage, real estate taxes, homeowners dues, fire and extended insurance coverage, lawn care, snow removal, and all other costs associated with the ownership and occupancy of the marital residence.

\* \* \*

CASH DISTRIBUTION TO [WIFE]

40.     Upon the entry of a decree of dissolution of marriage, [Husband] shall pay to [Wife] on the first day of each month thereafter the following sums:

a.     Assuming their agreement that the residence real estate of the parties now has a market value of $550,000, and further assuming and their agreement that there now exists a first and only mortgage lien upon the residence real estate in the amount of $350,000, equity of $200,000 is set.

b.     [Husband] shall pay to [Wife] one half of the equity or the sum of $100,000 in [monthly installments varying in amounts based upon Husband's annual income].

\* \* \*

46.     In the event that [Husband] sells the residence real estate or requests that [Wife] leave the residence real estate before a period of five years following the date of dissolution of marriage, [Husband] shall pay [Wife] an additional amount of $70,000 under the same payment schedule set forth above.  If [Husband] is selling the residence real estate, the remaining debt to [Wife], interest and costs shall be paid from the net proceeds of sale.

47.     [Husband] agrees that this debt shall be a lien or charge upon the residence real estate, and <u>he shall not either increase, modify or restore the mortgage debt, except to refinance for a lesser interest rate, without the express written consent of [Wife] first having been received</u>.

48.     At such time as the debt obligation owed to [Wife] by [Husband] is six months from final payment, the residence real estate shall be reappraised.  Given an assumed debt of $350,000, a new equity shall be determined.  If one-half of that equity exceeds $100,000, [Husband] shall continue the payments beyond the six months until the additional one-half of the equity is paid to [Wife].  If one-half of that equity equals or is less than the original amount of $100,000, the payment schedule shall be completed and [Husband] shall have no further obligation to [Wife] for this sum of money.

\* \* \*

DEBTS ACQUIRED PRIOR TO FILING

54.     In addition to the real estate mortgage, lease obligations, chattel mortgages and other debts referred to earlier in this agreement, the parties have no debt other than reoccurring monthly obligations, including credit card balances.  [Husband] agrees to pay all monthly obligations incurred through the month in which the decree of dissolution is granted.

55. To the extent that [Husband] (even if joined by [Wife]) may have used the real estate to secure any debt other than the existing first mortgage, [Husband] agrees to release the real estate as security from such debt as promptly as possible, and in no event longer than six (6) months. In the event of the sale of the real estate, and such debt still remains against the real estate, the debt shall be paid from any proceeds to which [Husband] would otherwise be entitled.

56. As to any debt or obligation incurred by [Husband] since the filing of the petition of dissolution, he agrees to pay the same, to hold [Wife] harmless and to indemnify her from any loss or expense therefore.

Appellant's App. at 11-17 (emphases added).

Pursuant to the terms of the Agreement, Husband paid off the balance of a home equity line of credit within six months from the date of the decree. But that line of credit remained open, and from January through April 2012, Husband drew against the line of credit a total of $60,800. Husband used that money to keep his farm business functioning. On June 29, 2012, Husband closed the line of credit and converted the $94,000 balance owed into a term loan, with the marital residence serving as collateral for the loan.

In the meantime, on April 25, 2012, Wife, who had conveyed her interest in the marital residence to Husband pursuant to the terms of the Agreement, filed a Verified Petition for Rule to Show Cause why Husband should not be found in contempt. In her petition, Wife alleged in relevant part that Husband had "fail[ed] and refuse[d] to comply with the provisions of the Agreement" in that he "has failed and refused to cause the second mortgage secured by the residence to be released" and "has failed and refused to pay off the existing second mortgage debt on the residence, and has refused to refrain from using the equity of the residence as security for a second mortgage." Id. at 48-49. Following a hearing, the trial court found and concluded in relevant part:

4

20. The evidence before the Court established that the "second mortgage" referred to at the Final Hearing and in the Contempt Petition was in fact a rotating line of the credit secured by the marital home (hereinafter the "SLOC").

\* \* \*

22. The SLOC falls within the language of Paragraph 55 of the Agreement which refers to "any debt other than the existing first mortgage" secured by the marital home.

23. The evidence before the Court at the Final Hearing established that the outstanding indebtedness of the SLOC was paid down to $0.00 by Husband by July 2011 (within the time allotted to him under Paragraph 55 of the Agreement "to release the real estate from such debt as promptly as possible, and in no event longer than six (6) months") and that Husband has drawn substantial funds from such SLOC since the date of dissolution in the total amount of $94,000.00.

24. The evidence at the Final Hearing established that Husband converted the SLOC to [a] term loan on or about mid-2012. As such, Husband no longer has the ability to draw funds from the SLOC.[] However, under the terms of the Term Loan, Husband is paying monthly payments of approximately $600.00, with a balloon payment due in mid-2013.

25. Wife claims that Husband is in contempt of this Court for using the SLOC after the date of dissolution because Husband was obligated to release the Marital Home as security for the SLOC within six (6) months of the date of dissolution. Instead, Wife claims, that while Husband paid down the SLOC to no balance by June or July 2011, his subsequent draws on the account constitute contempt of this Court and that Wife is being damaged because her equity in the Marital Home is jeopardized by Husband's conduct.

26. Husband countered by claiming that he believed the language of the Agreement barred him only from securing new loans or credit lines secured by the Marital Home and that he did not secure a new loan secured by the Marital Home when he made his post-dissolution draws on the SLOC, but that he merely drew upon an already existing credit facility. Husband further claimed that his post-dissolution draws on the SLOC were used to finance the fixed and variable costs, including salary to himself, of his cattle farming business and that such conduct was in accord with the pre-dissolution practice that he employed for financing such business, i.e., drawing on the SLOC, using such funds to operate his business, and then paying down the SLOC upon receiving proceeds from the sale of the cattle. Husband also claimed that his conduct was not harming the payment of Wife's equity interest as she has already received $12,000.00 towards the $100,000.00 that she is owed.

27. While Husband's conduct as to the new draws upon the SLOC may cause some initial cause for concern, the evidence established that Wife continues to receive the payments towards her $100,000.00 of marital equity in the Marital Home pursuant to and in accordance with the terms of the Agreement. Wife has not suffered any damage as a result of Husband's alleged failure to comply with the Agreement and any claims that her interests may be "jeopardized" do not amount to actual damage or harm that was caused by Husband's failure to comply with the Agreement. The evidence further demonstrated that Husband's conduct as to the post-dissolution draws upon the SLOC were in keeping with the well-established pattern of financial conduct that the Parties engaged in prior to their dissolution. The Agreement results in a near continuation of the Parties' financial lifestyle prior to the dissolution; a lifestyle that could not be maintained but for Husband's draws upon the SLOC and without such draw[s] it is not clear how, based on the evidence before the Court, Husband would have been able to meet his other obligations under the Agreement, including his obligations to make the first mortgage payments on the Marital Home and to continue providing vehicle insurance for Wife. As Wife has not suffered any damage from Husband's alleged contemptuous failure of his obligation to discharge and release the SLOC pursuant to the Agreement, there is no remedy in contempt available to Wife for the alleged contemptuous conduct and the Contempt Petition is hereby dismissed and discharged upon Husband's alleged contemptuous failure to discharge and release the SLOC.

* * *

29. Wife admitted into evidence a fee affidavit from her attorney in support of her request for attorney's fees in connection with the Contempt Petition. After considering the foregoing factors related to the award of post-dissolution attorney's fees, including the resources of the parties, their current economic condition, and other factors that bear on the reasonableness of an award, this Court hereby orders that each Party shall pay his or her own attorney's fees in connection with the Contempt Petition.

Id. at 5-8. Wife filed a motion to correct error, which the trial court denied. This appeal ensued.

6

# DISCUSSION AND DECISION

## Issue One: Contempt

Wife first contends that the trial court abused its discretion when it did not find Husband in contempt of the dissolution decree. Our supreme court has set out the applicable standard of review:

> A party that is willfully disobedient to a court's order may be held in contempt of court. City of Gary v. Major, 822 N.E.2d 165, 170 (Ind. 2005). The order must be "clear and certain" in its requirements. Id. It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard. Id. at 171. "We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding." Id. . . . "[C]ontempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." Id. at 169 (citing Hopping v. State, 637 N.E.2d 1294, 1297 (Ind. 1994)). The trial court has the inherent power to "maintain [] its dignity, secur[e] obedience to its process and rules, rebuk[e] interference with the conduct of business, and punish[] unseemly behavior." Id. (citing State v. Shumaker, 200 Ind. 623, 640-41, 157 N.E. 769, 775 (1927)). Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully. Id. at 170 ("In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order."); In re Perrello, 260 Ind. 26, 29, 291 N.E.2d 698, 700 (1973) ("The willful disobedience of a court order can constitute indirect . . . contempt. However, the act must be done willfully and with the intent to show disrespect or defiance." (citations omitted)); Meyer v. Wolvos, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999) ("When a person fails to abide by a court's order, that person bears the burden of showing that the violation was not willful."). The determination of whether to find a party in contempt permits the trial court to consider matters which may not, in fact cannot, be reflected in the written record. The trial court possesses unique knowledge of the parties before it and is in the best position to determine how to maintain its "authority, justice, and dignity" and whether a party's disobedience of the order was done willfully.

Witt v. Jay Petroleum, Inc., 964 N.E.2d 198, 202-03 (Ind. 2012).

Here, Wife maintains that her interest in the equity of the marital residence is impaired as a result of Husband's using the residence as collateral for a $94,000 loan in contravention of the terms of the Agreement. In particular, Wife asserts that that encumbrance "would reduce the likelihood that [Wife] would receive the full amount she was entitled to at the time of sale of the property because it would reduce the equity. It would reduce the likelihood she would be paid the sum over the $100,000 minimum when the house was sold." Appellant's Brief at 13. And Wife contends that the trial court was "obligated to enforce" the provisions of the Agreement and that its failure to do so constitutes an abuse of discretion. Id. at 17.

All orders contained within a dissolution of marriage decree may be enforced by contempt. Ind. Code § 31-15-7-10. When dissolving a marriage, parties are free to negotiate their own settlement agreements and may incorporate those into a dissolution decree. Deel v. Deel, 909 N.E.2d 1028, 1032 (Ind. Ct. App. 2009). The settlement agreements then become binding contracts and are interpreted according to the general rules of contract construction. Id.

Here, the Agreement explicitly states that Husband agrees that "he shall not either increase, modify or restore the mortgage debt, except to refinance for a lesser interest rate, without the express written consent of [Wife] first having been received." Appellant's App. at 35. Thus, Husband violated that provision of the Agreement when he borrowed $94,000 with the marital residence as collateral. But the trial court found that Wife has not suffered any harm as a result of that loan. Indeed, the $94,000 loan is less than the amount of equity owed to Husband under the terms of the Agreement. And

8

if the marital residence is sold, any balance remaining on the term loan would be chargeable entirely against his interest. Finally, Husband has not missed any payments to Wife to date. However, we disagree with the trial court, and we agree with Wife that she has been harmed in that her security interest in the marital residence has been impaired as a result of the term loan.

Regardless, the trial court also concluded that Husband's conduct was "in keeping with the well-established pattern of financial conduct that the Parties engaged in prior to their dissolution." Appellant's App. at 16. In essence, then, the trial court found that Husband's conduct was not a willful violation of the decree. Thus, Wife has not demonstrated that the trial court abused its discretion when it declined to find Husband in contempt. See, e.g., Whitman v. Whitman, 405 N.E.2d 608, 614 (Ind. 1980) (affirming trial court's order concluding father not in contempt despite noncompliance with child support order).[1]

### Issue Two: Attorney's Fees

Wife next contends that the trial court abused its discretion when it denied her request for attorney's fees. We review an award of attorney's fees for an abuse of discretion. Scoleri v. Scoleri, 766 N.E.2d 1211, 1221 (Ind. Ct. App. 2002). The trial court has broad discretion in assessing attorney's fees, and reversal is warranted only when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. Id. When assessing attorney's fees, the trial court

---

[1] While we hold that the trial court did not abuse its discretion when it did not find Husband in contempt, the evidence is undisputed that Husband violated the terms of the Agreement when he used the marital residence as collateral for the term loan. On remand, if the term loan is still outstanding, Wife is not entirely without recourse to compel Husband to comply with this provision of the Agreement.

considers the resources of the parties, their economic condition, their ability to engage in gainful employment and to earn adequate income and other factors that bear on the reasonableness of the award. Id. The court may also look at the responsibility of the parties in incurring the attorney's fees. Id. The trial judge possesses personal expertise that he or she may use when determining reasonable attorney's fees. Id.

Here, as stated in its order, the trial court made the appropriate considerations in rejecting Wife's attorney's fee request. Wife's contention on appeal amounts to a request that we second-guess the trial court, which we will not do. The trial court did not abuse its discretion when it ordered the parties to pay their own attorney's fees.

Affirmed.

BAKER, J., and CRONE, J., concur.