## FOR PUBLICATION



**FILED**

Nov 17 2014, 6:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JASON M. SMITH**
Seymour, Indiana

ATTORNEY FOR APPELLEE:

**KATHRYN D. SCHMIDT**
Burke Costanza & Carberry LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE WALTER PENNER TRUST UNDER AGREEMENT CREATED BY THE GRANTOR, WALTER PENNER ON APRIL 13, 2010, | ) ) ) ) ) | |
| STANLEY PENNER, | ) ) | |
| Appellant-Petitioner, | ) ) | |
| vs. | ) ) | No. 45A03-1212-TR-516 |
| RONALD PENNER, | ) ) | |
| Appellee-Respondent. | ) | |

**APPEAL FROM THE LAKE CIRCUIT COURT**
The Honorable George Paras, Judge
Cause No. 45C01-1112-TR-17

**November 17, 2014**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

The parties to this case, along with their brother Frank Penner, are beneficiaries of the Walter Penner Living Trust (Trust). According to the terms of the Trust, Ronald Penner became the Trustee of the Trust on Walter's death. Stanley Penner brought an action against Ronald in his capacity as Trustee, and the trial court found against Stanley on all counts. Stanley now appeals the denial of his motion to correct error and the trial court's order that he pay attorney fees to the Trust. He presents multiple issues for our review, which we consolidate and restate as:

1. Whether the trial court erred when it determined Ronald, in his capacity as Trustee, did not commit the following breaches of trust:

    a. failure to submit an accounting of the Trust;

    b. mismanagement of funds and property;

    c. co-mingling of Ronald's personal funds and Trust funds;

2. Whether the trial court erred when it determined Stanley was not entitled to attorney's fees;

3. Whether the trial court erred when it ordered Stanley to pay the Trust's attorney's fees because his claim was frivolous; and

4. Whether Stanley is entitled to appellate attorney's fees.

We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

On April 13, 2010, Walter created the Trust, named Ronald, Stanley, and Frank as beneficiaries, and named Ronald as successor trustee, with Frank to serve if Ronald was

unable, and Stanley to serve if Ronald and Frank were unable. Walter died on March 30, 2011. Shortly thereafter, Ronald, Stanley, and Frank met to discuss the assets of the Trust. At that time, Ronald proposed the three work on repairing Walter's home, which was an asset of the Trust, in order to prepare it for sale in August 2012.

The brothers met at Walter's house in August 2011 to work on it, but little was accomplished. At that time, Stanley indicated he planned to sue Ronald (hereinafter, "Trustee") in his capacity as trustee, and he would do so to deplete the assets of the Trust. Neither Ronald nor Frank thought Stanley was joking. In addition, Stanley also said his statement "[was] not a threat; it [was] a promise." (App. at 151.)

On December 9, 2011, Stanley filed a Petition for Trustee's Accounting, for Order to Sell Real Estate, and Related Matters, alleging Trustee had committed certain breaches of trust including failure to render an accounting, mismanagement of Trust assets, and mismanagement of the sale of Walter's residence. The trial court held a hearing on the matter on February 16, 2012, during which Stanley argued Walter's residence should be deeded to the three brothers as tenants in common. On the day of the hearing, Trustee filed a request for attorney's fees, alleging Stanley's claims were frivolous and the legal action was meant to harass. Stanley orally requested attorney's fees during the hearing.

While the case was pending, Walter's residence sold. On August 23, 2012, the trial court issued its order denying Stanley's claims and denying Stanley's oral request for attorney's fees. Stanley filed a motion to correct error on September 24; it was deemed denied on November 8, 2012. The parties appeared before the trial court on November 8 for

3

a status conference and to present their arguments regarding attorney's fees. On December 7,

Stanley filed his notice of appeal with this court. On February 1, 2013, the trial court ordered

Stanley to pay $13,166.00 in attorney's fees to the Trust, and it denied Stanley's request for

attorney's fees. Stanley filed an amended appeal with this court on February 28, 2013.

## DISCUSSION AND DECISION

A trial court has broad discretion in ruling on a motion to correct error. *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind. Ct. App. 2001). We will reverse only for an abuse of that discretion. *Id*. An abuse of discretion occurs if the decision was against the logic and effect of the facts and circumstances before the court or if the court misapplied the law. *Id*.

The trial court *sua sponte* entered findings of fact and conclusions of law. When the trial court enters findings *sua sponte*, the specific findings control only as to the issues they cover, and a general judgment standard applies to any issue on which the court has not entered findings. *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1214-15 (Ind. Ct. App. 2002). In reviewing the judgment, we determine whether the evidence supports the findings and the findings support the judgment. *Id*. at 1215. We will reverse only when the judgment is clearly erroneous, *i.e.*, when it is unsupported by the findings of fact and conclusions entered on the findings. *Id*. For findings of fact to be clearly erroneous, the record must lack probative evidence or reasonable inferences from the evidence to support them. *Id*. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh

4

evidence or assess credibility of witnesses. *Id*. A general judgment may be affirmed on any theory supported by the evidence presented at trial. *Id*.

### 1. Alleged Breaches of Trust

The court's primary purpose in construing a trust document is to "ascertain and give effect to the settlor's intention." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). Indiana follows "the four corners rule" that "extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Hauck v. Second Nat'l Bank of Richmond*, 153 Ind. App. 245, 259, 286 N.E.2d 852, 861 (1972), *reh'g denied*. Therefore, the court must give effect to a Trust's clear meaning without the use of extrinsic evidence where a Trust is capable of clear and unambiguous interpretation. *See Baker*, 943 N.E.2d at 532. Document language is not ambiguous simply because two parties disagree about the meaning of the language. *Id*. Rather, "language is ambiguous only if reasonable people could come to different conclusions as to its meaning." *Id*.

### a. Accounting of Trust

Regarding the Trustee's responsibility to provide an accounting to Stanley, the trial court found:

> 9. Stanley requested an accounting of the Trust assets and the Trustee has not provided one. The Trust, in [Section] VII. D., provides no accountings are required. Trustee did provide Stanley bank statements and other financial documents for his review. Trustee also provided information to Stanley regarding the estimated Indiana inheritance tax liability which was due December 30, 2011. The IH-6 was filed and Stanley paid his share of the tax which was less than he anticipated.

(App. at 10.) Based on that finding, the trial court concluded:

> 8. Trustee provided Stanley with and [sic] bank account and other financial information although no formal accounting. However, the Trust document provides that there do not have to be accountings. [Section] VII D. It also provides that Trustee shall not be liable for actions taken in good faith. [Section] IV I. Stanley's allegations of "wrongful transactions" requiring an accounting are not established by the evidence. Trustee had the right to advance funds and in good faith used the checking account to pay expenses and create the trust account in order to preserve the trust property. The intent of the settler [sic] was for there to be no accounting and there is no reason to vary from the clear language evidencing that intent.

(*Id*. at 13-14.) Stanley argues he is entitled to an accounting despite language in the Trust relieving the Trustee of the requirement to do so. We disagree.

Section VII. D. of the Trust states, "No accountings or reports shall be required of the trustee." (*Id*. at 33.) While Ind. Code § 30-4-3-6(b) requires the trustee to "maintain clear and accurate accounts with respect to the trust estate" and provide access to the trust's accounting and financial records, and while Ind. Code § 30-4-5-12(a) requires the trustee provide an annual accounting of the trust, both statutory provisions indicate those requirements apply only when the terms of the trust do not provide otherwise. The language in the Trust was not ambiguous, and thus the Trust provisions override the statutes. The Trustee was not required to provide Stanley with an accounting of the Trust.

### b. Alleged Mismanagement of the Trust

Under Ind. Code § 30-4-3-6(a), the Trustee "has a duty to administer a trust according to the terms of that trust." Stanley argues Trustee violated that duty when Trustee: (1) did not immediately sell Walter's residence included in the Trust and disburse those assets to the

beneficiaries of the Trust; (2) did not make the Trust property productive and did not act as a prudent investor; and (3) prolonged the distribution of the Trust for Trustee's own benefit. The trial court rejected Stanley's allegations, and we find no error in that decision.

Stanley argues Trustee's delay in selling Walter's real estate upon his death violates the term of the trust which states: "Upon the death of the grantor, the trustee shall distribute the trust property outright to the beneficiaries named in Section V, Paragraph (A) subject to any provision in this Declaration of Trust." (App. at 32.) Under the "Specified Powers" section of the Trust:

> The trustee's powers include, but are not limited to:
> * * * * *
> 2.  The power to manage trust real estate as if the trustee were the absolute owner of it, including the power to lease or grant options to lease the property, to make repairs or alterations, and to insure against loss.
> 3.  The power to sell or grant options for the sale or exchange of any trust property, including stocks, bonds, debentures, and any other form of security or security account, at public or private sale for cash or on credit.
> 4.  The power to invest trust property in property of any kind, including but not limited to bonds, debentures, notes, mortgages, stocks, stock options, stock futures, and buying on margin.
> * * * * *
> 7.  The power to dispose and hold trust funds in interest-bearing accounts.
> * * * * *
> 11. The power to diversify investments.

(*Id*. at 31.) The trial court concluded the "Specified Powers" delineated in the Trust language were "clear and unambiguous and [gave] Trustee the full power to deal with the real estate." (*Id*. at 12.) The trial court noted: "Trustee is insuring the property, repairing and cleaning it and making it ready for sale in this [sic] spring." (*Id.*) Therefore, while Trustee was required

7

to disburse assets of the trust upon Walter's death, he was given the power to manage those assets to the benefit of the beneficiaries pursuant to the clause which states that disbursement is "subject to any Provision in this Declaration of Trust." (*Id*. at 32.)

Trustee presented evidence he decided to wait to list Walter's house on the market until the real estate market improved, as to maximize the profit gained from the sale of the house, that he and one of the other beneficiaries had been working to fix up the house, and that the other beneficiary was satisfied with his management of the trust. Stanley's argument is an invitation for us to reweigh the evidence, which we cannot do. *See Scoleri*, 766 N.E.2d at 1215 (appellate court cannot reweigh evidence on appeal).

c. <u>Co-mingling of Trust Assets</u>

Ind. Code § 30-4-3-6(b)(5) requires the Trustee to "[k]eep the trust property separate from the trustee's individual property[.]" Ind. Code § 30-4-3-3(a)(10)(A) grants Trustee the power to "advance money for the benefit of the trust estate and for all expenses or losses sustained in the administration of the trust." Stanley argues Trustee committed a breach of trust when he paid bills such as Walter's medical and funeral expenses, out of his personal account, instead of out of the Trust account, and then refused Stanley's request for an accounting of the Trust. Trustee did not.

Regarding this issue, the trial court found:

12.  [Trustee] has paid a number of bills with his own funds like the funeral and funeral lunch, Walter's final medical bills and payment for other work performed at the Residence. With only the house and personal possessions in the Trust, it is cash poor and funds must come from somewhere to maintain the trust property.

8

(App. at 11.) Based on that finding, the trial court concluded:

> 8. Trustee provided Stanley with and [sic] bank account information and other financial information although no formal accounting. However, the Trust document provides that there do not have to be accountings. [Section] VII D. It also provides that Trustee shall not be liable for actions taken in good faith. [Section] IV I. Stanley's allegations of "wrongful transactions" requiring an accounting are not established by the evidence. Trustee had the right to advance funds and in good faith used the checking account to pay expenses and create the trust account in order to preserve the trust property. The intent of the settler [sic] was for there to be no accounting and there is no reason to vary from the clear language evidencing that intent.

(*Id.* at 13-14.) We agree with the trial court. There was no evidence suggesting Trustee improperly used his personal funds for the benefit of the Trust, and the Trust language indicated an accounting of the Trust was not required. Stanley's argument is an invitation for us to reweigh the evidence, which we cannot do. *See Scoleri*, 766 N.E.2d at 1215 (appellate court cannot reweigh evidence on appeal).

2. Stanley's Attorney Fees

Under Ind. Code § 30-4-3-22(a), a "beneficiary of a trust may maintain an action (1) to compel the trustee to perform his duties . . . [or] (3) to compel the trustee to redress a breach of trust." Under Ind. Code § 30-4-3-22(e), if a beneficiary "*successfully* maintains an action under subsection (a) of this section . . . he is entitled to a judgment for reasonable attorney's fees." Stanley was not successful in his claim alleging deficiencies in Trustee's performance, and thus he was not entitled to attorney's fees.

3. Trust's Attorney Fees

Under Ind. Code § 34-52-1-1(b):

[T]he court may award attorney's fees as part of the cost to the prevailing

9

party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

For purposes of awarding attorney's fees under Ind. Code § 34-52-1-1(b), a claim is frivolous "if it is made primarily to harass or maliciously injure another[.]" *Parks v. Madison Cty.*, 783 N.E.2d 711, 723 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied.* A claim is "litigated in 'bad faith' if the party presenting the claim is affirmatively operating with furtive design or ill will." *Id.*

A trial court's decision to award attorney's fees pursuant to Ind. Code § 34-52-1-1(b) is subject to a multi-level review. *Purcell v. Old Nat. Bank*, 972 N.E.2d 835, 843 (Ind. 2012).

> [T]he trial court's findings of facts are reviewed under the clearly erroneous standard and legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed *de novo*. Finally, the trial court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of discretion. A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law.

*Id.*

In its order awarding attorney's fees to the Trust, the trial court found:

> 4. Trustee made several trips to Indiana during the summer of 2011. In August, the three brothers met at the property and were suppose [sic] to work on needed repairs. Trustee called Stanley and asked if he would work on the cracks in the dry wall. Stanley came with some spackle but proceeded to do nothing on the house but complained the entire time the three were there. Stanley indicated he would do anything to waste Trustee's time.
>
> 5. Also in August 2011, while all three brothers were at the house, Stanley

10

threatened Trustee saying he talked to a lawyer and that he was going to sue Trustee and deplete the assets of the trust with legal fees. Stanley admitted the conversation, saying it was a joke. Trustee and Frank did not think it was a joke. Stanley testified he told Trustee: "It is not a threat; it is a promise." He has followed through on that promise. As a result, thousands of dollars in legal fees have been incurred by the Trust.

6.     Stanley requested an accounting of the Trust assets and the Trustee has not provided one. However, the Trust, in [Section] VII, Paragraph D., provides no accountings or reports are required. Trustee did provide Stanley bank statements and other financial documents for his review. Trustee also provided information to Stanley regarding the estimated Indiana Inheritance Tax liability which was due December 30, 2011. The IH-6 was filed and Stanley paid his share of the tax which was less than he anticipated. Stanley has had the financial information and the request for an accounting is just another method by which he has harassed Trustee and depleted the assets of the trust.

7.     The personal property belonging to Walter Penner has now been distributed. Trustee sent an inventory to the other beneficiaries in August, 2011 and asked them to mark the items they wanted to have from the Residence. Trustee would then discuss the items with the others if more than one person wanted something; a decision would be made and then the property would be distributed. Originally, neither of the other beneficiaries returned the inventory. Stanley had not returned the inventory when he filed his petition requesting the distribution, again establishing his goal of harassing Trustee. Trustee gave the inventory to the beneficiaries again and all three met at the house on February 19, 2012 to review the personal property and decide what each was to receive. Since that time, the beneficiaries met at the house in April and June, 2012 obtaining items they wanted. At the meeting in June, Stanley indicated there were items of furniture he "maybe" would want. Trustee had to send out the inventory again with the "maybe" items marked asking Stanley to make up his mind. Stanley's complaints on the delay in the distribution of personal property are disingenuous as he has caused the delay by not responding promptly when Trustee sent the inventories for review. Filing the petition for distribution when he had not returned the inventory makes his petition unreasonable.

8.     Although Stanley has complained about everything that Trustee has done since the death of Walter and is making good on his "promise" to deplete the trust with legal fees, the other beneficiary and brother, Frank, said: he is happy about how all aspects of Walter Penner's estate were handled; he trusts Ronald as Trustee; the preparation of the house for sale was moving forward and he agreed that last year was a bad time to put the house up for sale. Stanley ignores such facts even though Frank is an equal stakeholder in this

11

matter. Stanley has pushed issues to harass Trustee and waste trust assets.

9. The actions taken by Stanley in regard to filing the Petition for Trustee's Accounting, For Order To Sell Real Estate and Related Matters when he knew Trustee's plan for the sale for the real estate, as well as having received the inventory of personal property to mark but did not return was primarily to harass and maliciously injure Trustee and should be deemed a frivolous, unreasonable and groundless filing.

10. Trustee has done exactly what he told the beneficiaries he would do. The house was readied for sale and put on the market on March 30, 2012 and the personal property was distributed in April and June, 2012 when the beneficiaries returned the inventories marked by them for the items requested. The Residence was sold and the transaction closed on July 27, 2012. Based upon the offer of $160,200.00 and the market value of $149,000.00 as of March, 2011, the value of the house increased $11,200.00 under the administration of Trustee. There was no reason for Stanley to file the petition requiring Trustee to go through a full hearing, submission of numerous memoranda and submission of proposed orders, etc. Trustee has had to expend thousands of dollars for attorney fees and many hours of his personal time to defend against the frivolous, unreasonable and groundless petition.

11. Stanley made an oral request for fees at the hearing in February, 2012 and followed it up with arguments that he had the right to file the petition and that he prevailed on his requests implying that the actions of Trustee were a result of the petition. The evidence does not support the conclusion and his initial request for attorney fees was denied by the Court in its August 23, 2012 order.

\* \* \* \* \*

14. Stanley filed a Motion to Correct Errors on September ,[sic] 2012 to which Trustee had to reply filing Trustee's Statement in Opposition to Beneficiary's Motion to Correct Errors on October 19, 2012. The Motion to Correct Errors was a regurgitation of the baseless assertions Stanley had made previously, was not set for hearing and was deemed denied on November 8, 2012.

15. The Trust provides in [Section] VI, Paragraph B. 6. that he [sic] Trustee has "[t]he power to employ and pay reasonable fees to accountants, lawyers, or investment experts for information or advice relating to the trust." Although the Trust may pay attorney fees, the Trust also provides in [Section] IV, Paragraph I that "[w]ith respect to the exercise or non-exercise of discretionary powers granted by this Declaration of Trust, the trustee shall not be liable for actions taken in good faith." The Trust should not have to incur the cost of unnecessary litigation.

12

(App. at 16-21.) Stanley asserts many of the trial court's findings are erroneous and attempts to continue his argument regarding these findings in his appellate brief. Specifically, Stanley takes issue with findings regarding Walter's residence and the sale thereof, the quantity of financial documents provided to him by Trustee, and his unwillingness to agree to the manner in which Trustee attempted to divide Walter's personal property. His arguments are invitations for us to reweigh the evidence, which we cannot do. *See Scoleri*, 766 N.E.2d at 1215 (appellate court cannot reweigh evidence on appeal).

Even if the findings to which Stanley objects were not supported by sufficient evidence, the fact remains he made a statement to Trustee and Frank indicating his intent to drain the corpus of the Trust by filing legal actions, those legal actions were unsuccessful based on the clear language of the Trust, and Stanley continued his legal harassment regardless. We find no abuse of discretion in the trial court's award of legal fees to the Trust.

4.      Appellate Attorney's Fees

In his brief, Stanley requests appellate attorney's fees because "the probate court abused its discretion when it refused to order an accounting and found Stanley's claim frivolous[.]" (Br. of Appellant at 28.) As noted in previous sections of this opinion, the trial court did not err in its decision regarding the Trustee's management of the Trust, its award of attorney's fees to the Trust, or its denial of attorney's fees to Stanley. Accordingly, we deny Stanley's request for appellate attorney's fees.

However, under Appellate Rule 67, we may *sua sponte* award appellate attorney's fees in the event an appeal is "permeated with meritlessness, bad faith, frivolity, harassment,

13

vexatiousness, or purpose of delay." *GEICO v. Rowell*, 705 N.E.2d 476, 483 n.12 (Ind. Ct. App. 1999), *reh'g denied*.  As noted above, Stanley's arguments, at the trial court and on appeal, are groundless and frivolous based on the controlling statutes and the plain language of the Trust.  One of the most egregious of these is Stanley's assertion that he was entitled to attorney's fees at the trial court level based on Ind. Code § 30-4-3-22(e), which grants attorney's fees to a beneficiary who is successful in a claim to enforce the terms of the Trust. There is no ambiguity - the trial court's order clearly indicates Stanley was unsuccessful in his action to enforce what he claimed to be the terms of the Trust.  His request for attorney's fees at the trial court, as well as the appellate level, is ridiculous.

In addition, Stanley failed to comply with many of the Indiana Rules of Appellate Procedure.  First, he did not include a table of contents in his Appendix as required by App. R. 50(C).  In a case with the multitude of filings such as the instant case, the absence of a table of contents severely hinders the review of the appeal.  In addition, Stanley's Statement of Facts is rife with argument, which is not permitted under App. R. 46(A)(6).  *See also Wright v. Elston*, 701 N.E.2d 1227, 1230 (Ind. Ct. App. 1998) ("A Statement of Facts should be a concise narrative of the facts stated in a light most favorable to the judgment, [sic] and should not be argumentative."), *trans. denied*.  We recognize that, taken alone, none of these violations or arguments would rise to the level of appellate sanctions; however, taken together, they are an unnecessary drain on judicial resources.  Accordingly, we remand this matter to the trial court for computation and award of appellate attorney's fees to the Trust.

14

**CONCLUSION**

The trial court did not err in its findings and conclusions of law regarding Trustee's management of the Trust. Further, the trial court did not abuse its discretion when it awarded the Trust attorney's fees and denied Stanley's request for attorney's fees. Finally, we deny Stanley's request for appellate attorney's fees and *sua sponte* award the Trust attorney's fees, to be determined and ordered by the trial court on remand.

Affirmed and remanded.

KIRSCH, J., and BAILEY, J., concur.