


FILED

Feb 09 2026, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Ilene Breuning and Christine Morgan, as Co-Trustees of the Willi Breuning and Ilene Breuning Living Trust Agreement,

*Appellants-Defendants*

v.

Tim W. Breuning,

*Appellee-Plaintiff*

---

February 9, 2026

Court of Appeals Case No.
25A-TR-1491

Appeal from the Allen Superior Court

The Honorable Jennifer L. DeGroote, Judge

Trial Court Cause No.
02D03-2408-TR-10

---

**Opinion by Chief Judge Tavitas**
Judges Bailey and Kenworthy concur.

**Tavitas, Chief Judge.**

## Case Summary

[1] Tim Breuning ("Tim"),[1] one of the beneficiaries of the Willi Breuning and Ilene Breuning Living Trust Agreement ("the Trust"), filed a verified petition for a statement of accounts of the Trust. Ilene Breuning ("Ilene") and Christine Morgan ("Christine"), co-trustees of the Trust (collectively "Co-Trustees"), filed a petition for declaratory judgment requesting a determination that Ilene had authority under the terms of the Trust agreement to remove a certain Trust asset from the Trust after Willi Breuning's death. Tim filed a motion for summary judgment on this issue, and the Co-Trustees filed a cross-motion for summary judgment. The trial court concluded that the terms of the Trust agreement were unambiguous and that, after Willi Breuning's death, the residuary Trust property had to be distributed in equal shares to Tim, Ilene, and Christine. The trial court, therefore, granted summary judgment in favor of Tim and against the Co-Trustees. The Co-Trustees bring this interlocutory appeal and claim that the trial court erred as a matter of law in construing the terms of the Trust. We agree, and, accordingly, reverse and remand.

## Issue

[2] The Co-Trustees raise one issue, which we restate as whether the trial court properly granted summary judgment in favor of Tim.

---

[1] Because many of the parties share the same surname, we use their given names to distinguish them.

## Facts

The facts are undisputed.  Tim and Christine are the children of Willi Breuning ("Willi") by his first wife.  Willi subsequently married Ilene, and the two created the Trust on September 11, 2019.  The relevant terms of the Trust agreement include:

> **Section 1.1  Initial and Additional Funding.**  . . . The Settlors, in consideration of the covenants herein contained, hereby transfer and assign Ten and no/100 Dollars ($10.00) to the Trustees.  The Trustees hereby acknowledge receipt of the assets and agree to hold, administer and dispose of said assets, together with all additions thereto, in trust upon the terms herein set forth.
>
> Any person may add any property interests at any time to the principal of any trust created under this agreement.  However, additional property interests must first be acceptable to the Trustees.  All such additions shall be subject to the provisions of this trust agreement. . . .  The Trustees shall also accept as an addition to the principal of any trust established under this agreement any property which is devised by the Settlors' last wills and testaments to the Trustees, as Trustees of one or more of the trusts established under this agreement.
>
> Therefore, the trust property shall include (a) all assets transferred by the Settlors to the Trustees, including the initial and any additional asset transfers; and (b) all additional property interest added to the trust by any person and approved by the Trustees (collectively the "Trust Estate").
>
> **Section 1.2  Funding Marital Property.**  *Any tenancy by the entirety property held by the Trustees as part of the Trust Estate shall remain tenancy by the entirety property during the Settlors' lifetimes.*  Any transfer of such property to the Trust Estate shall not be construed as a partition unless there is an express written

agreement to that effect between the Settlors. *Notwithstanding anything to the contrary contained herein, any withdrawal of such property made during the Settlors' lifetimes shall be made only with the consent and written request of both Settlors.* Upon any withdrawal of tenancy by the entirety property from the Trust Estate, whether by request or due to the Trust's revocation, the Trustees shall re-convey the property to the Settlors as "husband and wife, as tenants by the entireties." *Until Settlors' deaths*, *both Settlors shall retain all rights, privileges and obligations regarding their tenancy by the entirety property as if that property were held by them free of the trust*.

\* \* \* \* \*

**5.1 Trust Distribution.** If Willi Breuning fails to survive Ilene Breuning, *immediately upon his death* the Trustee[s] *shall* distribute One Hundred Thousand Dollars ($100,000) outright and free of trust to Ilene Breuning, Twenty-Thousand Dollars ($20,000) each to Michael Breuning[2] and Dominic Hines,[3] outright and free of trust, and *shall distribute the remaining trust estate in equal shares to Ilene Breuning, Tim Breuning, and Christine Morgan, outright and free of trust*. If Ilene Breuning fails to survive Willi Breuning, immediately and upon her death the Trustee[s] shall distribute the Trust Estate outright and free to Willi Breuning.

Appellants' App. Vol. II pp. 18-24 (italic emphasis added).

[4] While they were married, Willi and Ilene acquired certain real estate in Tennessee ("the Tennessee Property") as tenants by the entireties; they then transferred the Tennessee Property to the Trust by quitclaim deed. Willi died

---

[2] Michael Breuning is Tim's son.

[3] Dominic Hines is Ilene's grandson.

on June 28, 2023, and the Tennessee Property was still held by the Trust at the time of his death.

[5] On August 12, 2024, Tim filed a petition for a verified written statement of accounts of the Trust. On October 18, 2024, the Co-Trustees filed a petition for declaratory judgment and sought an order from the trial court declaring that the Tennessee Property could be removed from the Trust estate and conveyed to Ilene. Tim filed a response in which he argued that the Tennessee Property was owned by the Trust at the time of Willi's death and was part of the residuary Trust property to be distributed equally between Tim, Ilene, and Christine.

[6] On February 3, 2025, Tim filed a motion for summary judgment in which he claimed that the Tennessee Property was part of the Trust Estate and could not be distributed to Ilene alone. On March 12, 2025, the Co-Trustees filed a cross-motion for summary judgment in which they reasserted their claim that Ilene, as the surviving Settlor, could remove the Tennessee Property from the Trust and convey it to herself. The trial court held a hearing on the matter on March 26, 2025.

[7] On April 25, 2025, the trial court entered an order granting summary judgment in favor of Tim and denying summary judgment in favor of the Co-Trustees. The trial court's order provided in part:

> The terms of the Trust in question are clear and unambiguous. Section 1.2 prohibits Ilene from transferring the Tennessee Property out of the Trust following Willi's death. Section 5.1 directs that, as part of the estate of the Trust, the Tennessee

Property shall be equally divided into shares for Ilene, Tim and Christine.

Therefore, the Court hereby enters Judgment as a matter of law in favor of Tim and against Ilene and Christine on the Motion for Declaratory Judgment. The Tennessee Property is an asset of the [Trust]. Furthermore, Co-Trustees are ordered to transfer title to the Tennessee Property to Ilene Br[eu]ning, Tim Br[eu]ning, and Christine Morgan, in equal shares, as tenants in common. . . .

Appellants' App. Vol. II p. 162.

[8] The Co-Trustees then filed a motion requesting the trial court to certify its summary judgment order for interlocutory appeal, which the trial court granted. The Co-Trustees then filed a motion in this Court, asking us to accept interlocutory jurisdiction. We granted this motion, and this appeal ensued.

## Discussion and Decision

[9] The Co-Trustees claim that the trial court erred by granting summary judgment in favor of Tim and denying summary judgment in their favor.

### A. Standard of Review

#### 1. Summary Judgment

[10] Our Supreme Court has explained our review of rulings on motions for summary judgment as follows:

We review summary judgment decisions de novo, and Trial Rule 56(C) supplies the framework. The moving party is entitled to summary judgment only if the evidence it designates in support of its motion "shows that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Like a motion for judgment on the evidence, the purpose of summary judgment is to withdraw issues from the jury only when there are no factual issues for the jury to decide. Summary judgment is available when the nonmovant **cannot prove** its claim based on the undisputed evidence, and judgment on the evidence is available when the nonmovant **has not** proved its claim because no reasonable jury could find for it.

*Cave Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 685 (Ind. 2024) (citation modified) (emphasis in original).

[11] The summary judgment movant has the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020). The burden then shifts to the non-moving party which must then show the existence of a genuine issue of material fact. *Id*. On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Id*. "We limit our review to the materials designated at the trial level." *Gunderson v. State*, 90 N.E.3d 1171, 1175 (Ind. 2018).

[12] Here, neither party claims that there is a genuine issue of material fact; instead, their arguments are purely legal—whether the trial court properly construed the Trust agreement.

## B. Construction of Trusts

The interpretation of a trust instrument is a question of law we review de novo. *Paloutzian v. Taggart*, 931 N.E.2d 921, 925 (Ind. Ct. App. 2010) (citing *Univ. of S. Ind. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006)). Section 3 of the Trust Code provides:

> The rules of law contained in this article shall be interpreted and applied to the terms of the trust so as to implement the intent of the settlor and the purposes of the trust. If the rules of law and the terms of the trust conflict, the terms of the trust shall control unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize.

Ind. Code § 30-4-1-3. Accordingly, we have held that:

> [t]he primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention and carry out this intention unless it is in violation of some positive rule of law or against public policy. . . . This Court is not at liberty to rewrite the trust agreement any more than it is at liberty to rewrite contracts. When a trust instrument must be construed by a court, we attempt to discern the settlor's intent in light of the facts and circumstances existing at the time the instrument was executed.

*Paloutzian*, 931 N.E.2d at 925 (citation modified). "We look at the trust [instrument] as a whole and cannot take individual clauses out of context. If the trust [instrument] is capable of clear and unambiguous construction, we must give effect to the [instrument]'s clear meaning." *Fulp v. Gilliland*, 998 N.E.2d 204, 207 (Ind. 2013) (citation modified).

Here, both parties agree that the Trust agreement is unambiguous.[4] They merely disagree as to how it should be interpreted. *See In re Walter Penner Tr.*, 22 N.E.3d 593, 597 (Ind. Ct. App. 2014) ("A trust instrument's language is not ambiguous simply because the parties disagree about its meaning; instead, the language of the instrument is ambiguous only if reasonable people could come to different conclusions as to its meaning.") (internal quotations omitted), *trans. denied*.

### C. *Tenancy by the Entireties*

Because this dispute centers on real property held as tenants by the entireties, we first address this "peculiar estate." 15 Ind. Law Encyc. Husband and Wife § 46 (2026 Update). "A tenancy by the entirety is . . . founded on the common-law fiction of the unity of a husband and wife." *Id*.

> Once an estate owned in tenancy by the entireties has vested, each spousal tenant becomes seized of the entire estate, but neither is seized of any divisible part thereof; thus, an entireties estate cannot be severed by the unilateral action of one of its tenants. A tenancy by the entirety resembles a joint tenancy in that there is a right of survivorship in both tenancies, but such a tenancy is distinguishable from a joint tenancy in that a joint tenancy may be invested in any number of natural persons, each of whom is seized of an undivided moiety of the whole, whereas a tenancy by the entirety is vested in two persons only, who in

---

[4] We agree that the Trust agreement is unambiguous and, therefore, do not address Ilene's alternative argument that her affidavit clarifies any ambiguity. *See In re Walter Penner Tr.*, 22 N.E.3d 593, 597 (Ind. Ct. App. 2014) (noting that extrinsic evidence is inadmissible to add to, vary, or explain the terms of a written instrument so long as the terms of the instrument are clear and unambiguous), *trans. denied*.

> law are regarded as one person and each of whom becomes seized of the estate as a whole.
>
> The four unities essential to establish a tenancy by the entireties are unity of estate, unity of possession, unity of control, and unity in conveying or encumbering. If these four unities are not present, no tenancy by the entireties exists.

*Id*. (footnotes omitted).

[16] If a husband and wife hold property as tenants by the entireties, "the survivor ordinarily takes the whole estate, irrespective of any attempt by a decedent to make a different disposition by will." *Id*. at § 47 (footnote omitted). "Survivorship is the most important incident of a tenancy by the entirety." *Id*. (citing *Baker v. Cailor*, 186 N.E. 769, 770 (Ind. 1933)). "An essential trait of this tenancy is that it 'devolves upon the surviving spouse the ownership of the property in real estate, free and clear of the individual indebtedness of the other spouse.'" *Flatrock River Lodge v. Stout*, 130 N.E.3d 96, 100 (Ind. Ct. App. 2019) (quoting *Underwood v. Bunger*, 70 N.E.3d 338, 342 (Ind. 2017)).

### D. *The trial court erred by granting summary judgment in favor of Tim.*

[17] The Co-Trustees argue that, as the surviving settlor, Ilene has the power under Section 1.2 of the Trust agreement to remove the Tennessee Property from the Trust. This requires us to first consider the language of Section 1.2, which is set forth in full above.

[18] Section 1.2 first provides that "[a]ny tenancy by the entirety property held by the Trustees as part of the Trust Estate shall remain tenancy by the entirety

property during the Settlors' lifetimes." Appellants' App. Vol. II p. 19. It then provides that "[a]ny withdrawal of such property made during the Settlors' lifetimes shall be made only with the consent and written request of both Settlors." *Id.* This prevented either Settlor, while they were both alive, from unilaterally withdrawing from the Trust any property that was held as tenants by the entireties. And even if the other party did consent to such a withdrawal, the Trustees were required to "re-convey the property to the Settlors as 'husband and wife, as tenants by the entireties.'" *Id.* The most relevant portion of Section 1.2 is the final sentence, which provides: "Until Settlors' deaths, both Settlors shall retain all rights, privileges and obligations regarding their tenancy by the entirety property as if that property were held by them free of the trust." *Id.*

[19] The first sentence of Section 1.2 clearly provides that "[a]ny tenancy by the entirety property held by the Trustees as part of the Trust Estate," which here is the Tennessee Property, "shall remain tenancy by the entirety property during the Settlors' lifetimes." *Id.* And the last sentence of Section 1.2 clearly and unambiguously provides that until the "death**s** of the Settlor**s**," using the plural for both. *Id.* (emphasis added). This can only refer to the deaths of both Settlors. Until the deaths of both Settlors, Ilene retains "all rights, privileges and obligations regarding [the Tennessee Property] as if that property were held by them free of the trust." *Id.* This language can only mean that the Tennessee Property retained its character as tenancy-by-the-entireties property even though

it was conveyed to the Trust, [5] and it was to be treated as if it were held "free of the trust" until both Willi and Ilene died. *Id.* Because Ilene survived Willi, both Settlors had not yet died, and the Tennessee Property retained its entireties character.

[20] By providing that the Tennessee Property "shall remain tenancy by the entirety property" and that the Settlors would retain "all rights, privileges and obligations" as if the property were "held by them free of the trust," *id.*, Section 1.2 preserved the "most important right" of entireties property—the right of survivorship. *Baker*, 186 N.E. at 770. If the Tennessee Property had not been placed in the Trust, Willi's death would have automatically vested sole ownership in Ilene by operation of law. Section 1.2 specifically ensures that placing the Tennessee Property in the Trust would not alter this characteristic of that property. Thus, upon Willi's death, the survivorship characteristic that is the most important incident of a tenancy by the entirety functioned exactly as it would if the Tennessee Property had not been transferred to the Trust: Ilene became the sole owner of the property by operation of law.

[21] The trial court's conclusion to the contrary effectively rendered the final sentence of Section 1.2 meaningless. *See In re Estate of Shoptaugh*, 482 N.E.2d

---

[5] The Tennessee Property was transferred to the Trust via a quitclaim deed. But "a tenancy by the entirety is not severed when the husband and wife transfer entireties property into a revocable trust that imposes the same restrictions against severability and transferability in that they, as grantor-trustees, have to act jointly to dispose of the trust assets or to revoke the trust." 41 C.J.S. Husband and Wife; Spouses § 45 (2025 Update) (citing *In re Bellingroehr,* 403 B.R. 818, 821 (Bankr. W.D. Mo. 2009)); *see also Anuszkiewicz v. Anuszkiewicz,* 360 N.E.2d 230, 233 (Ind. Ct. App. 1977) (holding that proceeds from the sale of real property held by the entireties retain their character of survivorship when the married parties so intend "by appropriate action").

1142, 1144 n1. (Ind. Ct. App. 1985) (noting that courts reject interpretations of a trust agreement that would render a portion thereof meaningless); *Skinner v. Spann*, 93 N.E. 1061, 1066 (Ind. 1911) (holding that a will must not be interpreted so as to render any part thereof superfluous, absurd, and meaningless). That is, if all the property of the Trust were to be divided per Section 5.1, Ilene would *not* retain all of her rights, privileges and obligations regarding the Tennessee Property as if that property were held free of the Trust as clearly provided for in Section 1.2.

[22] Our conclusion does not mean that Section 1.2 and Section 5.1 are in conflict. "It is well-settled that, 'in reading the terms of a [trust] together, we keep in mind that the more specific terms control over any inconsistent general statements.'" *Greene v. Greene*, 268 N.E.3d 1284, 1290 (Ind. Ct. App. 2025) (quoting *DLZ Ind., LLC v. Greene Cnty.*, 902 N.E.2d 323, 328 (Ind. Ct. App. 2009)). Here, Section 1.2 is a specific provision dealing only with property held as tenants by the entireties, whereas Section 5.1 is a general provision dealing with all other Trust property. Indeed, Section 5.1 by its own terms governs the distribution of the "remaining trust estate." Appellants' App. Vol. II p. 24. This excludes the tenancy-by-the-entireties property controlled by Section 1.2.

## Conclusion

[23] Section 1.2 is applicable until the deaths of both Settlors, and pursuant to this section, Ilene retained all of her rights to the Tennessee Property as if it were held under a tenancy by the entireties, including the right of survivorship.

When Willi died, the title in the Tennessee Property vested in Ilene as a matter of law. Section 1.2 is a specific provision that controls over Section 5.1, which is a general provision that addresses how to distribute the remaining Trust assets. We, therefore, conclude that the trial court erred by granting summary judgment in favor of Tim and against the Co-Trustees. Accordingly, we reverse the trial court's judgment and remand with instructions that the trial court enter summary judgment in favor of the Co-Trustees.

Reversed and remanded.

Bailey, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANTS

Stephen J. Harants
Miller & Harants
New Haven, Indiana


ATTORNEY FOR APPELLEE

Kent C. Litchin
Grossman & Litchin P.C.
Fort Wayne, Indiana